IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDWARD J. O'KINSKY | : | CIVIL ACTION |
|     Plaintiff, | : | |
| | : | NO.  10-6075 |
| v. | : | |
| | : | |
| WILLIAM A. PERONE, ESQUIRE; | : | |
| WIGGIN AND DANA, LLP; WILLIAM | : | |
| LUBY, ALASDAIR RITCHIE, HOSE | : | |
| HOLDINGS, LLC; and WATERWAYS | : | |
| FRANCHISE, LLC | : | |
|     Defendants. | : | |

**DuBOIS, J.**                                                                                                          April 20, 2012

# M E M O R A N D U M

## I.  INTRODUCTION

Plaintiff brings this action under Pennsylvania law for legal malpractice against defendants William A. Perrone, Esq., and Wiggin and Dana, LLP ("Wiggin"), the law firm employing Perrone, and for fraud and breach of contract against William Luby and Alasdair Ritchie ("moving defendants").[1] Plaintiff alleges that moving defendants deceived him into signing a written contract by omitting terms from—and adding terms to—a prior verbal agreement and by hiring Perrone to advise him to sign the contract.

Presently before the Court is the Motion of Defendants William Luby and Alasdair Ritchie to Dismiss Counts V and VI of Plaintiff's Amended Complaint. For the reasons stated below, the Court denies the motion with respect to Count VI, the breach-of-contract count, and grants the motion in part and denies it in part with respect to Count V, the fraud count.

---

[1] Plaintiff asserts no claim against defendants Hose Holdings, LLC, and Waterways Franchise, LLC, in the Amended Complaint. The Court directs the Clerk of Court to remove these two parties from the caption.

-1-

**II.   BACKGROUND**[2]

   **A.  Contractual Negotiations**

Plaintiff, a firefighter by profession, formed Waterway, Inc. (Southern Division) ("Waterway"), in 1989 to do business in firefighting-equipment testing and maintenance. (Am. Compl. ¶¶ 6, 15.) In September 2006, Ritchie approached plaintiff to discuss moving defendants' interest in franchising his technology and system. (Id. ¶ 7.) In November 2006, plaintiff and moving defendants reached the following verbal agreement: moving defendants obtained the right to license plaintiff's fire-hose-and-ladder-testing technology and system, sell franchises through a "franchise sales corporation," and earn an as-yet-unstated percentage of the franchise sales corporation's profits; in return, plaintiff was to be paid a $100,000 annual salary by the franchise sales corporation and $10,000 from each initial franchisee payment. (Id. ¶ 9.) Plaintiff also promised to provide technical support to the franchise sales corporation. (Id.) The verbal agreement provided that plaintiff would retain sole control of Waterway. (Id.)

Thereafter, moving defendants told plaintiff that they had retained an attorney, Perrone, to advise both plaintiff and themselves with respect to drafting and executing a written contract with terms identical to the verbal agreement the parties had already reached. (Id. ¶¶ 11, 14, 50.) Moving defendants and Perrone told plaintiff that using one attorney to represent both parties was proper. (Id. ¶ 11, 50.) However, Perrone and Wiggin now contend that they were retained to represent only moving defendants. (Id. ¶ 51.)

Perrone advised plaintiff to enter into the written agreement and led him to believe that it included the terms of the verbal agreement. (Id. ¶ 13.) There was no formal closing, but on May 15, 2007, plaintiff signed "some documents which were faxed to him and one document which

---

[2] As required on a motion to dismiss, the Court takes all plausible factual allegations contained in plaintiff's Amended Complaint to be true.

Luby asked him to sign after the contractual documents were allegedly executed." (Id. ¶ 14.) Perrone led plaintiff to believe that the written contract contained the terms of the verbal agreement. (Id. ¶ 13.) Plaintiff did not receive a complete copy of the contract documents until March 2009. (Id. ¶ 17.)

### B. Later Developments and the Terms of the Written Contract

The written contract that plaintiff signed in May 2007 did not contain the same terms as the verbal agreement into which he entered in November 2006. (Id. ¶ 66.) However, because plaintiff never read the written contract, he did not suspect that it differed from the verbal agreement until November 2008, when he stopped receiving his $100,000 salary.[3] (Id. ¶ 17.) On March 9, 2009, Perrone sent plaintiff a letter enclosing the complete written contract that plaintiff signed on May 15, 2007. (Id. Ex. A, at 2).

Among other provisions, the written contract increased the number of shares in Waterway from 100 to 300 and provided for the sale of 200 newly-created shares to moving defendants for $500,000.[4] (Id. Ex. A, Written Consent Sole Dir. Waterway, Luby Subscription Agreement Shares, Ritchie Subscription Agreement Shares.) Thus, under the written contract, moving defendants owned two-thirds of Waterway. (Id. Ex. A, at 2.) Further, under the written contract, moving defendants, not plaintiff, were elected to serve as Waterway's directors. (Id., Ex. A, Unanimous Written Consent Stockholders Waterway.) The written contract does not provide plaintiff with a $100,000 salary or $10,000 franchisee payments, although it does require plaintiff to work at least forty hours per week for Waterway. (Id. Ex. A, Waterway Stockholder's

---

[3] The Amended Complaint does not state how much plaintiff received in salary prior to November 2008.

[4] Each moving defendant purchased 100 shares for $250,000. (Id. Ex. A, Written Consent Sole Dir. Waterway.) The Complaint does not state where this money went or what it was used for. The share purchase was accomplished through the use of a holding company, Hose Holdings. (Id. Ex. A, Operating Agreement Hose Holdings LLC.)

Agreement 10-11.) Finally, the contract contains an integration clause stating that the "[a]greement constitutes the entire agreement among the parties and supersedes any prior agreements among the parties, whether written or oral, relating to the subject matter hereof." (Id. at 13.)

### III.   LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that, in response to a pleading, a defense of "failure to state a claim upon which relief can be granted" may be raised by motion to dismiss. To survive a motion to dismiss under Rule 12(b)(6), a civil plaintiff must allege facts that "raise a right to relief above the speculative level." Victaulic Co. v. Tieman, 499 F.3d 227, 234 (3d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662 (2009) (quoting Twombly, 550 U.S. at 570). To satisfy the plausibility standard, a plaintiff's allegations must show that defendant's liability is more than "a sheer possibility." Id. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557).

In Twombly, the Supreme Court used a "two-pronged approach," which it later formalized in Iqbal. Iqbal, 129 S. Ct. at 1950; Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (3d Cir. 2009). Under this approach, a district court first identifies those factual allegations that constitute nothing more than "legal conclusions" or "naked assertions." Twombly, 550 U.S. at 555, 557. Such allegations are "not entitled to the assumption of truth" and must be disregarded. Iqbal, 129 S. Ct. at 1950. The court must then assess "the 'nub' of the plaintiff['s]

complaint—the well-pleaded, nonconclusory factual allegation[s] . . . to determine" whether it states a plausible claim for relief. Id.

## IV. DISCUSSION

In Count V of the Amended Complaint, plaintiff argues that moving defendants committed fraud by misrepresenting the terms of the written contract to him, fraudulently omitting from the written contract terms to which the parties agreed in the verbal contract, and telling plaintiff that they hired Perrone to advise plaintiff throughout the contract negotiations and execution of the contract. (Id. ¶ 57.) In Count VI, plaintiff alleges that moving defendants breached the terms of their verbal agreement with plaintiff by taking control of Waterway, stopping payment of his salary in November 2008, and failing to pay him $10,000 for each initial franchisee payment.[5] (Id. ¶¶ 9, 60, 62, 64, 69.)

Moving defendants argue that the parol evidence rule bars evidence of the alleged verbal agreement or other pre-contractual statements allegedly constituting fraud. (Mot. Dismiss 6, 8.) Thus, they ask the Court to dismiss Counts V and VI. (Id.)

The Court begins its analysis with Count VI, plaintiff's breach-of-contract claim. The Court then addresses Count V, plaintiff's fraud claim, as the analysis in Count V hinges on that of Count VI.

### A. Count VI: Breach of Contract

To prove the existence of the verbal agreement made prior to the written contract's execution, plaintiff must introduce evidence of the parties' pre-contractual statements. Under Pennsylvania law, the parol evidence rule bars such statements unless the party attempting to introduce the evidence is asserting a claim for "fraud in the execution." Dayhoff, Inc., v. H.J.

---

[5] Plaintiff has also alleged that moving defendants failed to reimburse his travel expenses. (Am. Compl. ¶ 63.) The court does not address this alleged breach of contract because plaintiff has not alleged that the verbal agreement contained a travel-expense-reimbursement provision.

Heinz Co., 86 F.3d 1287, 1300 (3d Cir. 1996). Conversely, if a party alleges only "fraud in the inducement," the parol evidence rule bars the introduction of pre-contractual statements. Id.

As explained below, plaintiff alleges fraud in the execution of the contract. Accordingly, he may introduce parol evidence of the verbal agreement to support his breach-of-contract claim, and defendants' motion is denied with respect to Count VI.

### 1.  Fraud in the Execution Versus Fraud in the Inducement

Fraud in the execution of a contract occurs when important terms of a contract are altered or omitted such that the agreement is radically different from what the defrauded party was led to believe. See Connors v. Fawn Mining Corp., 30 F.3d 483, 490-93 (3d Cir. 1994) (holding that including a pension-contribution provision in a union contract where the defrauded party was told that no such term would be included constituted fraud in the execution). By contrast, a fraud-in-the-inducement claim "does not involve terms omitted from an agreement, but rather allegations of oral representations on which the . . . party relied in entering into the agreement but which are contrary to the express terms of the agreement." Dayhoff, 86 F.3d at 1300.

In the instant case, plaintiff claims fraud in the execution, not fraud in the inducement. Plaintiff claims to have believed he was selling franchise rights to moving defendants. However, the written contract provided for moving defendants to gain two-thirds control of plaintiff's company—a provision which plaintiff claims was never discussed—and omitted important terms regarding plaintiff's annual salary and payment of a portion of initial franchisee fees. Thus, plaintiff alleges that moving defendants fraudulently altered and omitted terms they told him would be in the contract and that he agreed to something radically different from that which he was led to believe. These allegations constitute fraud in the execution. See Connors, 30 F.3d at 490-93.

Moving defendants rely on Southwest Administrator's Inc. v. Rozay's Transfer, in arguing that plaintiff is asserting a fraud-in-the-inducement claim. 791 F.2d 769 (9th Cir. 1986). (Mot. to Dismiss 5.) However, Rozay's Transfer involved a promise by one party to interpret in a certain way a term that both parties knew was in the contract. Id. at 774-75. In the instant case, plaintiff does not allege moving defendants misrepresented terms both parties knew were in the contract. Thus, Rozay's Transfer is inapposite. See also Dayhoff, 86 F.3d at 1298-1301 (holding that a plaintiff alleged fraud in the inducement in claiming that he signed a contract only after the defendant misrepresented how a termination clause, which both parties knew was in the contract, would be used in practice).

### 2. Excusable Ignorance

A plaintiff seeking to prove fraud in the execution must also show "excusable ignorance" of the difference between the actual agreement and what he was led to believe. Connors, 30 F.3d at 490-91. Excusable ignorance does not necessarily require a party to have read or insisted on reviewing a copy of the written contract before signing. See, e.g., id. at 492 (holding that a party was excusably ignorant where it was under significant time pressure and the document it signed was only a signature page); Operating Eng'rs Pension Trust v. Gilliam, 737 F.2d 1501, 1504-05 (9th Cir. 1984) (holding that an employer had a valid contract defense where a union representative told him that he was signing an agreement to operate a bulldozer for a single union project, but the written agreement actually contained a collective bargaining agreement covering all of the employer's employees)[6]; Roofers Local 30 Combined v. Plato Const. Corporation, No, 04-00714, 2006 WL 516770, at *5 (E.D. Pa. Mar. 1, 2006) (finding a genuine issue of material

---

[6] Gilliam did not explicitly address fraud in the execution but rather focused on whether there was mutual assent to a contract. However, the court in Gilliam used an analysis similar to that of fraud in the execution, and many fraud-in-the-execution cases cite it, including Connors and Roofers Local.

fact regarding a fraud-in-the-execution claim where a party signed two blank pages he was told would later reflect an agreement to hire two or three employees but which were later filled in with a collective bargaining agreement covering all his employees).

Plaintiff alleges that in signing the written contract, he relied on the representations of Perrone, an attorney who moving defendants said was representing him and who assured him that the contract contained the terms he discussed with moving defendants. Thus, like in Gilliam, plaintiff relied on someone in a position of authority and expertise to explain the contract to him. Plaintiff also alleges irregularities in the execution of the contract, claiming that he signed "some documents which were faxed to him and one document which Luby asked him to sign after the contractual documents were allegedly executed," (Am. Compl. ¶ 14), and that he was not provided a complete copy of the contract documents for almost two years after executing the contract. Plaintiff also asserts that he is not a sophisticated contractor, being a firefighter by profession. Given these circumstances and the considerable length of the contractual documents, the Court concludes that plaintiff has made a prima facie showing of excusable ignorance.

Plaintiff alleges fraudulent omission and alteration of terms of the verbal contract and excusable ignorance of the terms of the written contract. Thus, he has sufficiently pled a claim for fraud in the execution, and the parol evidence rule does not bar evidence of the terms of the alleged prior verbal agreement. As such, the Motion to Dismiss is denied as to Count VI.

**B. Count V: Fraud**

Because plaintiff claims fraud in the execution rather than fraud in the inducement, plaintiff may introduce evidence of pre-contractual statements to prove his fraud claim. Dayhoff, 86 F.3d at 1300. However, most of the allegations included in plaintiff's fraud claim are barred by the "gist-of-the-action doctrine." The gist-of-the-action doctrine prevents plaintiffs from

"recast[ing] ordinary breach of contract claims into tort claims" by claiming fraud based on violation of obligations promised in a contract. Farmaceutisk Laboratorium Ferring v. Shire U.S., Inc., No. 08-941, 2009 WL 973563, at *8 (E.D. Pa. Apr. 7, 2009) (citing eToll v. Elias/Savion Adver., Inc., 811 A.2d 10, 14 (Pa. Super. Ct. 2002), and Bash v. Bell Tel. Co., 601 A.2d 825, 829-30 (Pa. Super. Ct. 1992)).

Most of plaintiff's fraud count alleges facts constituting no more than a violation of the terms of the alleged verbal agreement. (Am. Compl. ¶¶ 45-48, 54, 57.). First, the alleged verbal agreement provided that plaintiff would retain sole control of Waterway, whereas under the written contract, moving defendants obtained control of Waterway. Second, the alleged verbal agreement provided that plaintiff would receive a $100,000 annual salary and $10,000 from each initial franchisee payment, whereas he was not entitled to either under the written contract and moving defendants stopped paying his salary and never made any franchise payments to plaintiff. These allegations merely recast plaintiff's breach-of-contract claim and are barred by the gist-of-the-action doctrine. See Farmaceutisk, 2009 WL 973563, at *8.[7]

However, plaintiff alleges, in paragraphs fifty through fifty-two of the Amended Complaint, that moving defendants committed fraud by telling him that Perrone and Wiggin represented him. These allegations do not relate to the verbal agreement. Thus, the gist-of-the-action doctrine does not prevent plaintiff from asserting such claims. While it may turn out that these representations involve no more than fraud in the inducement, this issue was not briefed and the court does not address it in this Memorandum.[8]

---

[7] The fraud count also contains allegations of plaintiff's reliance on attorney misrepresentations which are more germane to plaintiff's legal malpractice claims (Counts I-IV).

[8] Defendants also argue in response to the fraud claim that plaintiff suffered no financial harm from the funding and apportionment of ownership provided for by the written contract. As this

For the above stated reasons, the Court grants defendants' Motion to Dismiss with respect to Count V of the Amended Complaint other than those allegations arising out of moving defendants' misrepresentations to plaintiff that Perrone and Wiggin represented plaintiff.

## V.    CONCLUSION

For the foregoing reasons, the Court denies defendants' Motion to Dismiss Counts V and VI of Plaintiff's Amended Complaint with respect to Count VI (breach of contract) and grants the motion with respect to all allegations in Count V (fraud) except for paragraphs fifty through fifty-two.

An appropriate Order follows.

---

argument is not relevant to the limited fraud allegations surviving the "gist of the action" doctrine, the Court does not address it.